# United States Court of Appeals for the Federal Circuit

---

**VICTOR B. SKAAR,**
*Claimant-Cross-Appellant*

**v.**

**DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellant*

---

2021-1757, 2021-1812

---

Appeals from the United States Court of Appeals for Veterans Claims in No. 17-2574, Chief Judge Margaret C. Bartley, Judge Amanda L. Meredith, Judge Michael P. Allen.

---

Decided:  September 8, 2022

---

CAROLINE MARKOWITZ, Veterans Legal Services Clinic, Jerome N. Frank Legal Services Organization, Yale Law School, New Haven, CT, argued for claimant-cross-appellant.  Also represented by MEGHAN BROOKS, MATTHEW HANDLEY, ADAM HENDERSON, JOSHUA HERMAN, MICHAEL JOEL WISHNIE.  Also argued by ANTHONY PICCIRILLO, Simpson Thacher & Bartlett LLP, New York, NY. Also represented by LYNN K. NEUNER.

SOSUN BAE, Commercial Litigation Branch, Civil

Division, United States Department of Justice, Washington, DC, argued for respondent-appellant. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., PATRICIA M. MCCARTHY; BRIAN D. GRIFFIN, JONATHAN KRISCH, Office of General Counsel, United States Department of Veterans Affairs, Washington, DC.

JONATHAN D. SELBIN, Lieff, Cabraser, Heimann & Bernstein, LLP, New York, NY, for amici curiae Maureen S. Carroll, Zachary Clopton, Brooke D. Coleman, Robin Effron, Maria Glover, Andrew Hammond, Deborah R. Hensler, Helen Hershkoff, Alexandra D. Lahav, Elizabeth G. Porter, Alexander Reinert, Judith Resnik, Michael D. Sant'Ambrogio, Joan E. Steinman, Adam S. Zimmerman. Also represented by YAMAN SALAHI, Edelson PC, San Francisco, CA.

DORIS JOHNSON HINES, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, for amicus curiae National Veterans Legal Services Program.

_____

Before MOORE, *Chief Judge*, NEWMAN and HUGHES, *Circuit Judges*.

HUGHES, *Circuit Judge*.

United States Air Force veteran Victor B. Skaar was exposed to ionizing radiation while participating in a cleanup operation in Palomares, Spain. Thirty years later, he was diagnosed with leukopenia. He filed a claim with the Department of Veterans Affairs for service-connected benefits, and the Board of Veterans' Appeals denied his claim. Mr. Skaar appealed the Board's denial to the United States Court of Appeals for Veterans Claims. There, he challenged the soundness of the radiation dose estimates provided by the Air Force and relied upon by the Board in denying his claim. By motion for class certification, Mr. Skaar sought to make this challenge on behalf of all

similarly situated veterans who had participated in the Palomares cleanup operation. The Veterans Court certified a class, with Mr. Skaar serving as its representative, that includes veterans who had not received a Board decision and that excludes veterans whose claims had been denied but not timely appealed. *See Skaar v. Wilkie*, 32 Vet. App. 156, 201 (2019) (*Class Certification*). The Secretary of Veterans Affairs appeals, and Mr. Skaar cross-appeals, the Veterans Court's class definition.

On appeal, the Secretary asserts that the Veterans Court lacked authority to certify a class that includes veterans who had not received a Board decision—a statutory prerequisite for the court's jurisdiction pursuant to 38 U.S.C. § 7252(a)—because jurisdiction over Mr. Skaar's individual claim did not create further jurisdiction over a class of similarly situated veterans whose individual claims were beyond the court's jurisdiction. We agree. By certifying a class that includes veterans who had not received a Board decision, the Veterans Court exceeded its jurisdiction. We accordingly vacate the court's class certification and remand for further proceedings.

On cross-appeal, Mr. Skaar contends that the Veterans Court should have equitably tolled the appeal period for veterans whose claims had been denied but not timely appealed and thus should have included such veterans as members of the certified class. We disagree. The Veterans Court rightly declined to equitably toll the appeal period for claimants who had not timely appealed their denied claims since none of the claimants had alleged, let alone established, the requisite due diligence in pursuing their rights. *See Toomer v. McDonald*, 783 F.3d 1229, 1237–38 (Fed. Cir. 2015). Thus, should the Veterans Court choose to reconsider on remand whether class certification is appropriate, the court shall confine the proposed class to include only Palomares veterans who had timely appealed, or were still able to timely appeal, Board decisions denying their radiation exposure claims.

I

A

In January 1966, a United States Air Force B-52 bomber carrying four thermonuclear weapons collided mid-air with another aircraft. Two of the weapons crashed into the ground near Palomares, Spain, and released "radioactive plutonium dust over the area, contaminating soil and crops, and spreading radioactive debris for miles." *Class Certification*, 32 Vet. App. at 168. "Mr. Skaar, along with nearly 1,400 other U.S. military personnel," assisted in the cleanup. *Id.* They also provided urine and nasal swab samples while on site "to assess possible radioactive exposure." *Id.* A group of service members "determined to be among the most exposed," including Mr. Skaar, were monitored for signs of radiogenic conditions for 18 to 24 months after the accident. *Id.*

Monitoring efforts for Mr. Skaar continued until December 1967, when the Air Force concluded that his health was not in "jeopardy from retention of radioactive materials as a result of participation in the [Palomares cleanup] operation." *Id.* (alteration in original) (citation omitted). Three decades later, in 1998, Mr. Skaar was diagnosed with leukopenia, a blood disorder characterized by a decrease in white blood cell count. His doctor opined that exposure to ionizing radiation "appear[s] to be the positive agent" that historically causes leukopenia, but "concluded [that] 'we have been unable to prove this.'" *Id.* Mr. Skaar subsequently filed a claim for service-connected benefits, which the agency denied in February 2000.

Mr. Skaar moved to reopen his claim in March 2011, and the regional office requested a radiation exposure opinion. The Air Force—the service branch responsible for providing the agency with exposure data and dose estimates for Palomares veterans—estimated "that Mr. Skaar's maximum total effective dose during the Palomares cleanup was 4.2 rem with a bone marrow committed

dose of 1.18 rem, compared to annual dose limits of 5 and 50 rem, respectively, for occupations typically involving radiation exposure." *Id.* at 169. Relying on these estimates, the Under Secretary for Benefits found it unlikely that Mr. Skaar's leukopenia was caused by radiation exposure while in military service and shared these findings in a dose estimate opinion provided to the regional office in May 2012. Shortly thereafter, the regional office denied Mr. Skaar's claim, and he appealed the denial to the Board.

"In October 2013, a private physician opined that Mr. Skaar's leukopenia 'is likely related to exposure to heavy radioactive material in [1966].'" *Id.* at 170 (alteration in original) (citation omitted). Two months later, while Mr. Skaar's appeal was still pending before the Board, the Air Force discovered errors in its radiation dose methodology, which was underestimating doses for some individuals including Palomares veterans. Consequently, "the Air Force intended to 'formally standardize [its] response methodology for radiation dose inquiries involving Palomares participants' by establishing dose estimates based on each veteran's specific duties." *Id.* (alteration in original) (citation omitted).

After reevaluating its dose estimate methodology, the Air Force provided the agency with revised dose estimates for Mr. Skaar, "assigning him a new maximum total effective dose of 17.9 rem and a bone marrow committed dose of 14.2 rem." *Id.* The Board found that these revised dose estimates amounted to new and material evidence warranting another dose estimate opinion and remanded the claim. The regional office obtained and considered a new dose estimate opinion from August 2016. Nonetheless, the regional office again found it unlikely that Mr. Skaar's "leukopenia was caused by exposure to ionizing radiation during military service," and denied his claim. *Id.* Mr. Skaar appealed to the Board.

"[I]n September 2016, a private physician opined that Mr. Skaar's leukopenia was 'a result of exposure to ionizing radiation/plutonium.'" *Id.* Even so, the Board denied Mr. Skaar's claim. In the Board's view, the August 2016 dose estimate opinion was "'highly probative' because it 'was based on a review of the entire record,' while Mr. Skaar's private medical opinions were not as probative because 'none offered any rationale for their statements.'" *Id.* (citation omitted). Mr. Skaar appealed the Board's decision denying his claim.

B

Before the Veterans Court, Mr. Skaar challenged the agency's "omission of the Palomares cleanup from the . . . radiation-risk activities" listed in 38 C.F.R. § 3.309(d)(3)(ii), as well as the Board's reliance on allegedly unsound dose estimates, in violation of 38 C.F.R. § 3.311(c), "when adjudicating Palomares veterans' claims." *Class Certification*, 32 Vet. App. at 171. Mr. Skaar moved to make these challenges on behalf of similarly situated veterans who were present during the Palomares cleanup. *Id.* at 170. The Veterans Court granted in part Mr. Skaar's motion and certified a class to litigate the § 3.311 challenge.[1] *Id.* at 201.

Relying on its existing authority to certify class actions in the petition context under *Monk v. Shulkin*, 855 F.3d 1312, 1318–20 (Fed. Cir. 2017), the Veterans Court determined that it "possess[es] the power to aggregate claims and certify class actions in the appeal context." *Class Certification*, 32 Vet. App. at 178. The court further acknowledged that class composition depends on whether it has

---

[1]    The Veterans Court held that Mr. Skaar lacks standing to bring the § 3.309 challenge but has standing to pursue the § 3.311 challenge. *Class Certification*, 32 Vet. App. at 172. He has not appealed this holding.

jurisdiction over each class member, that the court has "only one source of jurisdiction: 38 U.S.C. § 7252," and that "a final Board decision operates as the jurisdictional 'trigger' that gives [the Veterans Court] the authority to hear a particular appeal." *Id.* at 180. Breaking down the proposed class into five subgroups, the court then considered whether it has jurisdiction over the putative class comprising all veterans who were present at the 1966 Palomares cleanup that

> (1) had filed a radiation exposure claim with the agency, but had not timely appealed the regional office's denial to the Board (past claimants);

> (2) had filed a radiation exposure claim with the agency and appealed the regional office's denial to the Board, but had not timely appealed the Board's denial to the Veterans Court (expired claimants);

> (3) had appealed, or were still able to timely appeal, the Board's denial of a radiation exposure claim to the Veterans Court (present claimants);

> (4) had filed a radiation exposure claim that was still pending either before the regional office or the Board (present-future claimants); or

> (5) have developed a radiogenic condition but have not yet filed a radiation exposure claim with the agency (future-future claimants).

*Id.* at 179–180. The court determined that it has jurisdiction over present claimants "because they possess final Board decisions and either their 120-day windows to appeal those decisions to [the Veterans] Court have not yet expired or these claimants have already appealed within the 120-day time period." *Id.* at 180 (citing 38 U.S.C. §§ 7252(a), 7266(a)).

As for present-future and future-future claimants, the Veterans Court recognized that these claimants "pose a

unique jurisdictional issue" since none of them have received final Board decisions. *Id.* Still, the court concluded that its "jurisdictional statute does not prohibit the[] inclusion" of such claimants as class members. *Id.* Instead, the Veterans Court held that, "pursuant to [its] statutory authority under 38 U.S.C. §§ 7252 and 7261," it has "the authority to certify class actions that include veterans who have not yet received a final Board decision and those who have not yet filed a claim." *Id.* (citing *Monk*, 855 F.3d at 1318). In the court's view, "Mr. Skaar, as class representative, ha[d] obtained a final Board decision pursuant to [§] 7252," and his "satisfaction of [this] jurisdictional requirement" vested the court with jurisdiction over other class members, "much in the same way a named plaintiff's consent to proceed before a magistrate is sufficient to grant the magistrate jurisdiction to enter final judgment as to all class members." *Id.* at 181–82. Moreover, the court explained, Mr. Skaar's Board decision had opened a "jurisdictional door" that allowed the Veterans Court to "use [its] other authorities, as explained in *Monk* [], to aggregate Mr. Skaar's claims with those of the remaining class members." *Id.* at 181.

Then, turning to *Bowen v. City of New York*, 476 U.S. 467 (1986) for support, the Veterans Court held that it has "jurisdiction to certify a class action that includes members who do not have a final Board decision" so long as "(i) the challenged conduct is collateral to the class representative's administratively exhausted claim for benefits—i.e., the class representative has obtained a final Board decision; (ii) enforcing the exhaustion requirement would irreparably harm the class; and (iii) the purposes of exhaustion would not be served by its enforcement." *Id.* at 184–85. The court applied this standard here, and determined that it had jurisdiction over present-future and future-future claimants "and [need] not require exhaustion of administrative remedies by each and every class member." *Id.* at 185. The Veterans Court accordingly included

present-future and future-future claimants, along with present claimants, in the class. *Id.* at 186.

Next considering past and expired claimants, the court declined to equitably toll the appeal period for claimants who failed to timely appeal their denied claims and excluded both subgroups from the proposed class on that basis. *Id.* at 189. These claimants, the court observed, "could have challenged [the agency's] treatment of Palomares veterans just like Mr. Skaar, yet each chose not to." *Id.* at 187. And, the court noted, Mr. Skaar did not present any reason "to depart from *Bove*'s principle that the 120-day Notice of Appeal window to [the Veterans Court] will only be waived 'when circumstances precluded a timely filing despite the exercise of due diligence.'" *Id.* (quoting *Bove v. Shinseki*, 25 Vet. App. 136, 140 (2011) (per curiam), *overruled on other grounds by Dixon v. McDonald*, 815 F.3d 799 (Fed. Cir. 2016)). Thus, the court confined the class to present, present-future, and future-future claimants.

The Veterans Court then invoked Federal Rule of Civil Procedure 23 "as a guide for class certification in the appeal context," and considered whether the class met the requisites for class certification pursuant to Rule 23. *Id.* at 189. Finding that it did, the court certified the class, excluding past and expired claimants. *Id.* at 201. It defined the class as follows:

> [a]ll U.S. veterans who were present at the 1966 cleanup of plutonium dust at Palomares, Spain, and whose application for service-connected disability compensation based on exposure to ionizing radiation [the agency] has denied or will deny by relying, at least in part, on the findings of dose estimates requested under 38 C.F.R. § 3.311, except those whose claims have been denied and relevant appeal windows of those denials have expired . . . .

*Id.* at 189.

A year after certifying the class, the Veterans Court issued a decision on the merits of Mr. Skaar's § 3.311 challenge on behalf of the certified class. *Skaar v. Wilkie*, 33 Vet. App. 127 (2020) (*Merits Decision*). The court held that the Board had "provided an inadequate statement of reasons or bases for concluding that the Air Force's dose estimate constituted sound scientific evidence." *Id.* at 141. And as a result, the court set aside the April 2017 Board decision denying service connection for leukopenia and remanded the matter for the Board to readjudicate Mr. Skaar's § 3.311 challenge, further stating that "[t]his portion of [its] decision applies to the class certified in this matter." *Id.* at 143–44, 149. Following its merits decision, the Veterans Court entered judgment on January 12, 2021 and denied Mr. Skaar's motion for immediate issuance of mandate. Judgment at 1, *Skaar v. Wilkie*, 33 Vet. App. 127 (2020) (No. 17-2574); Judge's Stamp Order, for the Panel, Denying Appellant's Opposed Motion for Immediate Issuance of Mandate at 1, *Skaar v. Wilkie*, 33 Vet. App. 127 (2020) (No. 17-2574).

The Secretary appeals and Mr. Skaar cross-appeals, both challenging the Veterans Court's class definition.

## II

## A

Our jurisdiction to review decisions of the Veterans Court is governed by 38 U.S.C. § 7292. Unlike other statutory provisions that govern our jurisdiction, § 7292 does not expressly premise appellate review on the finality of the Veterans Court's decision. *Compare* 28 U.S.C. § 1295(a)(1) (conferring jurisdiction over "an appeal from a final decision of a district court"), *with* 38 U.S.C. § 7292(a) ("After a decision of the [Veterans Court] is entered in a case, any party to the case may obtain a review of the decision . . . ."). Nevertheless, we have "generally declined to review nonfinal orders of the Veterans Court." *Williams v. Principi*, 275 F.3d 1361, 1363 (Fed. Cir. 2002) (citation omitted). So

"remand orders from the Veterans Court ordinarily are not appealable because they are not final." *Adams v. Principi*, 256 F.3d 1318, 1320 (Fed. Cir. 2001). We will, however, depart from this strict rule of finality when the Veterans Court remands a matter for further proceedings if the following conditions are satisfied:

> (1) there must have been a clear and final decision of a legal issue that (a) is separate from the remand proceedings, (b) will directly govern the remand proceedings[,] or, (c) if reversed by this court, would render the remand proceedings unnecessary;

> (2) the resolution of the legal issues must adversely affect the party seeking review; and

> (3) there must be a substantial risk that the decision would not survive a remand, i.e., that the remand proceeding may moot the issue.

*Williams*, 275 F.3d at 1364 (footnotes omitted). The class certification satisfies these criteria.

First, the Veterans Court issued a clear and final decision regarding its jurisdiction to certify a class that includes veterans who had not received a Board decision. *See Travelstead v. Derwinski*, 978 F.2d 1244, 1247–49 (Fed. Cir. 1992) (holding that when "the court rendered a 'decision' interpreting a statute . . . and compelling action of the Secretary, on remand, . . . [t]his 'decision' was a final disposition of the proceeding," and was appealable). That decision addressed a legal issue involving the Veterans Court's jurisdictional statute that is separate from the remand proceeding involving 38 C.F.R. § 3.311(c) and dose estimates. *Compare Class Certification*, 32 Vet. App. at 166 ("We do not today address the merits of Mr. Skaar's claim."), *with Merits Decision*, 33 Vet. App. at 132 ("Today we address the merits of Mr. Skaar's appeal . . . . Beginning with the class claim concerning radiation dose estimates, we hold that the Board failed to meet its obligation

under 38 C.F.R. § 3.311(c) to ensure that dose estimates [the agency] received from the Air Force constitute 'sound scientific evidence.' We will remand this issue to the Board . . . .").

Second, the Veterans Court's resolution of the jurisdictional issue will adversely affect the Secretary by requiring the Secretary to expend time and resources addressing individuals beyond the Secretary's statutorily-permitted reach, i.e., veterans who have not filed claims for benefits.[2]

---

[2]　The Veterans Court's resolution of the jurisdictional issue not only affects the Secretary but also affects Mr. Skaar and similarly situated Palomares veterans who might benefit from a precedential opinion regarding the § 3.311 challenge. *See Merits Decision*, 33 Vet. App. at 151 (Meredith, J., concurring in part and dissenting in part) ("I am compelled to comment that the result here demonstrates that the en banc Court's resurrection of the limited remand mechanism, for the purpose of deciding [Mr. Skaar's] motion for class certification, turned out not to be an effective tool. More than 3 years after [Mr. Skaar] appealed the April 2017 Board decision, the panel is left with no choice but to conclude that the Board provided an inadequate statement of reasons or bases for its decision and to remand the matter for readjudication—the same relief that the en banc Court could have, and in my view, should have initially provided. Instead, the parties and the en banc Court expended considerable time and resources debating the efficacy of conducting class actions in the appellate context and the bounds of the Court's jurisdiction, without bringing [Mr. Skaar] any closer to receiving a decision that adequately addresses the merits of whether the dose estimates relied on by [the agency] are based on a methodology that complies with 38 C.F.R. § 3.311(c)." (citations omitted)); *see also Class Certification*, 32 Vet. App.

*See* 38 U.S.C. § 5101(a)(1)(A); *Travelstead*, 978 F.2d at 1248.

Third, there is a substantial risk that the remand proceeding may deprive the Secretary of an opportunity to later contest the Veterans Court's jurisdiction over the certified class since the Secretary is statutorily precluded from appealing to the Veterans Court any Board decision, including a grant of the class claim. *See* 38 U.S.C. § 7252(a); *see also Merits Decision*, 33 Vet. App. at 154 (Meredith, J., concurring in part and dissenting in part) ("[T]he Board's inadequate statement of reasons or bases frustrates judicial review, precluding [the Veterans Court's] ability to provide the requested class-wide relief and compelling [the court] to remand the matter for full readjudication without retaining jurisdiction. And, [the court] ha[s] no reason to assume that further adjudication of the [veteran's] claim will lead to a final Board decision adverse to the [veteran] or subsequent appellate review of the class issue for which he is the representative."). Thus, we may exercise jurisdiction over the court's class certification decision. *See Dambach v. Gober*, 223 F.3d 1376, 1379 (Fed. Cir. 2000) ("We do have jurisdiction . . . when there is a statutory

─────────────────

at 209 (Falvey, J., dissenting) ("We believe that the majority has created a class that exceeds our jurisdiction and offers a comparable outcome to members of that class that a precedential decision could provide without the manageability and preclusion problems inherent in class litigation."); *id.* at 221 ("If we had an adequate record, a panel might have, months ago, found that the dose methodology [the agency] used in Mr. Skaar's case was flawed and counter to 38 C.F.R. § 3.311. Its decision, a nationwide precedent, would have fixed any such systemic dose estimate problem and [the agency] would have been required to apply the Court's holding consistently to all veterans' cases.").

interpretation that will affect the remand proceeding and that legal issue might evade our future review.").

## B

By statute, we may "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof . . . and . . . interpret constitutional and statutory decisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(c). But our jurisdiction does not extend to challenges either to factual determinations or to the application of the law to the facts of a particular case, absent a constitutional issue. *Id.* § 7292(d)(2). Whether the Veterans Court had jurisdiction is a matter of statutory interpretation, *see id.* § 7252(a) (defining the Veterans Court's jurisdiction), which we review de novo, *In re Wick*, 40 F.3d 367, 370 (Fed. Cir. 1994). Likewise, whether the Veterans Court applied the correct legal standard for equitable tolling is a question of law we review de novo. *James v. Wilkie*, 917 F.3d 1368, 1372 (Fed. Cir. 2019).

## III

The Veterans Court certified a class that includes present, present-future, and future-future claimants but excludes past and expired claimants. The primary question before us, on appeal and cross-appeal, is which subgroups of claimants should the Veterans Court have included in, or excluded from, the certified class. The Secretary would have us confine the class to only present claimants, while Mr. Skaar would define the class broadly to include past, expired, present, present-future, and future-future claimants. We agree with the Secretary. The certified class should have included only present claimants because the Veterans Court did not have jurisdiction over past, present-future, or future-future claimants, and because the expired claimants cannot benefit from equitable tolling to revive claims that they could have timely appealed following the Board's denial.

A

The Veterans Court exceeded its jurisdiction when it certified a class to include veterans who had not received a Board decision and veterans who had not yet filed a claim. While the Veterans Court correctly acknowledged that "a final Board decision operates as the jurisdictional 'trigger' that gives [it] the authority to hear a particular appeal," the court held "that because Mr. Skaar, as class representative, ha[d] obtained a final Board decision pursuant to [§] 7252, the jurisdictional door ha[d] been opened, and [the Veterans Court] may use [its] other authorities, as explained in *Monk* [], to aggregate Mr. Skaar's claims with those of the remaining class members." *Class Certification*, 32 Vet. App. at 181. This was error. *See Weinberger v. Salfi*, 422 U.S. 749, 753 (1975) ("[W]hile [the court] had jurisdiction of the claims of the named appellees under the provisions of 42 U.S.C. § 405(g), it had no jurisdiction over the claims asserted on behalf of unnamed class members.").

The Veterans Court cannot predicate its jurisdiction over the claims of unnamed class members on its jurisdiction over Mr. Skaar's claim or its power to aggregate claims and certify class actions. *See Burris v. Wilkie*, 888 F.3d 1352, 1361 (Fed. Cir. 2018) ("[T]he Veterans Court cannot invoke equity to *expand* the scope of its statutory jurisdiction. Indeed, a court cannot write its own jurisdictional ticket." (cleaned up)). Class certification is merely a procedural tool that allows the court to aggregate claims, *see Wick*, 40 F.3d at 1370 (explaining that neither the Veterans Court's scope of review nor its rules of practice and procedure "provide an independent basis for jurisdiction"); it does not itself confer on the court jurisdiction to review individual claims it would otherwise lack, *Chula Vista City School District v. Bennett*, 824 F.2d 1573, 1579 (Fed. Cir. 1987) ("The claim of each member of the class must be examined separately to determine whether it meets the jurisdictional requirement."). Nor does our decision in *Monk*, in which we held only that the "Veterans Court has the

authority to establish a class action mechanism or other method of aggregating claims." 855 F.3d at 1322; *id.* at 1321–22 (declining to decide or address the circumstances in which a class certification would be appropriate). *Monk* does not provide a cognizable basis for circumnavigating the limits of the Veterans Court's statutory jurisdiction. *Cf. Mahaffey v. Sec'y of Health & Hum. Servs.,* 368 F.3d 1378, 1381 (Fed. Cir. 2004) (explaining that neither the Court of Federal Claims' scope of review nor its rules of practice and procedure confer authority on a court "to enlarge its jurisdiction" (citation omitted)). And the Veterans Court cannot invoke its authority to certify a class action in the appeal context unless the court has "jurisdiction over the claim of each individual member of the class." *Califano v. Yamasaki,* 442 U.S. 682, 701 (1979) ("[C]lass relief is consistent with the need for case-by-case adjudication emphasized by the Secretary, *at least so long as the membership of the class is limited to those who meet the requirements of [the judicial review statute]. Where the district court has jurisdiction over the claim of each individual member of the class*, Rule 23 provides a procedure by which the court may exercise that jurisdiction over the various individual claims in a single proceeding." (emphasis added) (citation omitted)).

Here, the Veterans Court has "only one source of jurisdiction: 38 U.S.C. § 7252(a)." *Class Certification,* 32 Vet. App. at 180 (citing *Henderson v. Shinseki,* 562 U.S. 428, 434 (2011)); *see Burris,* 888 F.3d at 1357 ("The Veterans Court, as an Article I tribunal, is a creature of statute by definition. As such, the court can only act through an express grant of authority from Congress." (citations omitted)). This jurisdictional statute empowers the Veterans Court to review decisions of the Board and confers upon the court "the power to affirm, modify, or reverse *a decision of the Board* or to remand the matter, as appropriate." 38 U.S.C. § 7252(a) (emphasis added). Thus, the Veterans Court's jurisdiction is "premised on and defined by the

Board's decision concerning the matter being appealed," *Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998), where "'decision' of the Board, for purposes of the Veterans Court's jurisdiction under [§] 7252, is the decision with respect to the benefit *sought by the veteran*," *Maggitt v. West*, 202 F.3d 1370, 1376 (Fed. Cir. 2000) (emphasis added). This means that "a veteran must first present a request for a benefit to the Board, then receive a decision on that request, in order to vest jurisdiction in the Veterans Court to consider the veteran's request and arguments in support thereof." *Id.* By definition, therefore, a class must be limited to veterans who satisfy the jurisdictional requirements of having requested a benefit and of having received a Board decision on that request.[3] *See, e.g.*, *Matthews v. Eldridge*, 424 U.S. 319, 328 (1976) ("The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary. Absent such a claim there can be no 'decision' of any type. And some decision by the Secretary is clearly required by the statute."); *Salfi*, 422 U.S. at 750, 764 ("The [d]istrict [c]ourt had no

---

[3]    We emphasize that the requirements of having requested a benefit and of having received a Board decision on that request are "purely 'jurisdictional' in the sense that [they] cannot be 'waived.'" *Matthews v. Eldridge*, 424 U.S. 319, 328 (1976). Both the statutory language and the provision's "placement within the [Veterans' Judicial Review Act]" make clear "that Congress wanted that provision to be treated as having jurisdictional attributes," since § 7252 "governs [the Veterans Court's] adjudicatory capacity." *Henderson*, 562 U.S. at 434–35, 439–40 (comparing § 7252 with § 7266 and holding that § 7266 is not jurisdictional). Thus, in relying on *Bowen* as a basis for jurisdiction over present-future and future-future claimants, *see Class Certification*, 32 Vet. App. at 184, the Veterans Court erroneously conflated jurisdiction and exhaustion, *see Matthews*, 424 U.S. at 328.

jurisdiction over the unnamed members of the class under 42 U.S.C. [§] 405(g), . . . since the complaint as to such class members is deficient in that it contains no allegations that they have even filed an application for benefits with the Secretary, much less that he has rendered any decision, final or otherwise, review of which is sought.").

Thus, the Veterans Court exceeds its jurisdiction when it certifies a class to include, as it did here, veterans who have not yet filed a claim—over whom even the Board would not have jurisdiction, *see* 38 U.S.C. §§ 7104(a) (jurisdiction of the Board to review the Secretary's final decisions), 511 (decisions of the Secretary)—and veterans who have not received a Board decision, *see id.* § 7252(a). That is, the Veterans Court lacked jurisdiction over past, present-future, and future-future claimants, since none of these claimants had received a Board decision. *Cf. Wick*, 40 F.3d at 370 ("Since it is clear that the action of the Secretary in denying payment to Wick was not a decision of the Board, it would seem equally clear that the court lacks jurisdiction over Wick's petition from that denial.").

Mr. Skaar argues that the Veterans Court can exercise jurisdiction over class members who have not received Board decisions because district courts routinely certify classes including future claimants. Cross-Appellant's Br. 26–30 (collecting cases). While district courts may indeed exercise jurisdiction over future claimants, that is because Congress explicitly conferred the district courts with supplemental jurisdiction encompassing such claims. *See* 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . . Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 560 (2005) (explaining that "§ 1367

confers supplemental jurisdiction over claims by . . . Rule 23 plaintiffs," i.e., members of a class action, over which it may lack original jurisdiction as long as it has original jurisdiction over at least one class member's claim). Critically, Congress has not enacted any comparable jurisdictional statute for the Veterans Court. While district courts may exercise supplemental jurisdiction over future claimants by virtue of their explicit statutory authority, the Veterans Court lacks such jurisdictional authority. Each court is limited to the jurisdiction bestowed upon it by Congress. Thus, the cases Mr. Skaar cites about the scope of district court jurisdiction are inapplicable where, as here, the Veterans Court has its own jurisdictional statute.

We accordingly vacate the Veterans Court's class certification. Should the court choose to reconsider on remand whether class certification is appropriate, the court shall exclude past, present-future, and future-future claimants, since no such claimants have received a Board decision.

B

On cross-appeal, Mr. Skaar contends that the Veterans Court should have included past and expired claimants as members of the certified class. He challenges the Veterans Court's decision declining to equitably toll the statutory period to appeal for these claimants. According to Mr. Skaar, the court misconstrued the legal standard for equitable tolling—set out in *Bowen*—"as creating a categorical rule that challenged policies must be 'secretive' to grant equitable tolling and waiver of exhaustion," and then improperly applied this rule to the "more claimant-friendly [Veterans' Judicial Review Act]." Cross-Appellant's Br. 46–47. We disagree.[4]

---

[4]    Although we vacate the class certification for lack of jurisdiction, our decision does not bar the Veterans Court

To benefit from equitable tolling, a claimant must demonstrate "(1) extraordinary circumstance; (2) due diligence; and (3) causation." *Toomer*, 783 F.3d at 1238; *see also Holland v. Florida*, 560 U.S. 631, 649 (2010) (requiring a petitioner to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" (cleaned up)). We have made clear that "due diligence must be shown in addition to an extraordinary circumstance." *Toomer*, 793 F.3d at 1238 (cleaned up). We have also acknowledged, as Mr. Skaar points out, "the need for flexibility," "for avoiding mechanical rules," and for "proceed[ing] on a 'case-by-case basis.'" *Id.* at 1239; Cross-Appellant's Br. 49.

Contrary to Mr. Skaar's contentions, the Veterans Court suggested neither that *Bowen* established a categorical rule restricting equitable tolling to challenges involving "secretive" policies nor that *Bowen* dictated the court's decision. Indeed, it was Mr. Skaar who had requested that the Veterans Court "equate [the agency's] adjudication of Palomares veterans' claims with the secretive conduct the Supreme Court found so reprehensible in [*Bowen*]" and

from considering again on remand whether class certification is appropriate, provided that the court has jurisdiction over each individual member of the proposed class. The court could, for example, consider whether certifying a class of present claimants is proper. It follows then that our decision to vacate the class certification does not moot Mr. Skaar's cross-appeal challenging the class definition. Thus, we still must consider whether expired claimants— the only other subgroup of claimants, besides present claimants, that satisfies the jurisdictional requirements under 38 U.S.C. § 7252—were improperly excluded from the certified class, i.e., whether the court should have tolled the appeal period for expired claimants.

permit equitable tolling for past and expired claimants on this basis. *Class Certification*, 32 Vet. App. at 187. And the Veterans Court unambiguously denied this request. The court instead identified several examples of the extraordinary circumstances for which waiver may be warranted, clarified that these examples do not present "an exhaustive list because there are no bright line rules in the equitable tolling context," and reiterated that "the extraordinary circumstances element [of equitable tolling] necessarily requires a case-by-case analysis and not a categorical determination." *Id.* (alteration in original) (quoting *James v. White*, 917 F.3d 1368, 1373 (Fed. Cir. 2019)).

Moreover, the Veterans Court observed that Mr. Skaar had never alleged that past and expired claimants "were precluded from timely filing appeals . . . for any reason other than [the agency's] historical practice in adjudicating claims from Palomares veterans." *Class Certification*, 32 Vet. App. at 187–89. And, as the court correctly reasoned, it's hardly surprising that the agency "will always (presumably) adjudicate claims in accord with its own interpretation of that law and [the Veterans Court's] legal pronouncements" "before a claimant succeeds in changing the law." *Id.* at 187. So "there is no principled way to distinguish" these claimants from "*any* other claimants who have been denied benefits, failed to appeal to [the Veterans] Court, and later discovered their benefits denial was based on an incorrect reading of the law." *Id.* at 187–88. Thus, the Veterans Court's analysis does not evince any legal error or misinterpretation of the law surrounding equitable tolling. We conclude that the court did not err in declining to equitably toll the appeal period for past and expired claimants and thus rightly excluded such claimants from the class.

IV

The Veterans Court's jurisdictional statute limits its authority to certify a class action in the appeal context, and

the court must have jurisdiction over the claims of every member of a class the court certifies. By certifying a class that includes veterans who had not received a Board decision and veterans who had not yet filed a claim, the Veterans Court exceeded its jurisdiction. We vacate the court's class certification and remand for further proceedings consistent with this opinion. Because we vacate the class certification, we also limit the application of the merits decision to Mr. Skaar's claim.

## VACATED AND REMANDED

### Costs

No costs.